1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA L. LANE, | ) 1:06cv1802 OWW DLB |
| | ) |
| | ) |
| Plaintiff, | ) FINDINGS AND RECOMMENDATION |
| | ) REGARDING PLAINTIFF'S |
| v. | ) SOCIAL SECURITY COMPLAINT |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## BACKGROUND

Plaintiff Donna L. Lane ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, for Findings and Recommendation to the District Court.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her applications on September 27, 2004, alleging disability since September 15, 2004, due to learning disabilities, back pain and high blood pressure. AR 72-80, 81-85, 135-140. After being denied both initially and upon reconsideration, Plaintiff requested a hearing

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

1    before an Administrative Law Judge ("ALJ").  AR 31-35, 41-46, 47.  On February 8, 2006, ALJ

2    Christopher Larsen held a hearing, and on March 3, 2006, he denied benefits.  AR 231-253, 10-

3    18.  On October 13, 2006, the Appeals Council denied Plaintiff's request for review.  AR 5-8.

4    <u>Hearing Testimony</u>

5    _____ALJ Larsen held a hearing in Fresno, California, on February 8, 2006.  Plaintiff appeared

6    with her attorney, Robert Ishikawa.  Vocational expert ("VE") Tom Dachelet also appeared and

7    testified.  AR 231.

8    Plaintiff testified that she was 47 years old at the time of the hearing.  She completed high

9    school in both regular and special education classes.  AR 235-236.  Plaintiff last worked on July

10   25, 2005, as weigher/inspector at a packing house.  This was a seasonal position that she had

11   performed for 26 years.  AR 236-238.  Plaintiff stopped working because she was complaining

12   that her right arm was sore and "got laid off by a doctor" for three months.  AR 238.  She

13   explained that her arm hurt before her accident in June 2000, when she fell off her bike and broke

14   her collar bone.  AR 239.  The injury made her arm pain worse.  AR 240.

15   Plaintiff testified that she could only lift her right arm "halfway" because "it's dead."  She

16   can't lift too much because she gets tired.  AR 240.  During the day, she watches television but

17   has to lie down because she's too tired.  She can't write for very long and doesn't write very well.

18   AR 242.  She tries, but is unable to do house work because she is too weak and tired. A R 243.

19   She goes out and sees friends but doesn't go to church anymore.  She is able to drive about seven

20   blocks before she gets weak.  AR 244.  Plaintiff takes a medication for pain that makes her sleepy

21   in the morning.  Her diabetes is "a little high."  AR 245.

22   When questioned by the ALJ, Plaintiff explained that in addition to her arm pain, she

23   cannot work because she also has knee and foot pain and is unable to stand.  AR 248.

24   For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age,

25   education and past work experience, who could understand, remember and carry out simple one-

26   or two-step job instructions, but can only occasionally reach, handle, finger or feel with her right

27   dominant upper extremity.  This person could not perform Plaintiff's past relevant work.  AR

28

1   251.  VE Dachelet further explained that at the unskilled level, two hands are generally required

2   for production jobs.  AR 252.

3        Medical Record

4        On December 2, 2004, Plaintiff underwent a psychological evaluation by Richard Engeln,

5   Ph.D.  Plaintiff reported that she has high blood pressure and diabetes but was not taking

6   medication.  During the course of the examination, Plaintiff admitted that her alcohol use may be

7   heavier than she initially reported and explained that her bicycle accident in 2000 happened after

8   she had too many Long Island ice teas.  AR 154-155.  Her only medication was Advil.  AR 155.

9        On mental status examination, Plaintiff was alert and oriented with no evidence of

10  delusions, hallucinations or confusion.  Her verbal intelligence test scores were high in the mild

11  range of mental retardation, and visual intelligence was low borderline.  IQ estimates were 66

12  verbal, 72 performance, and 65 full scale.  Her academic skills were at the third grade level.  The

13  Rey 15 Memory Test was positive for exaggeration.  Dr. Engeln noted that "there was a great

14  deal of histrionic emphasis on inadequacy" and that the obtained protocol "appears to be an

15  underestimate of abilities, and instead, reflect attitudinal-emotional issues."  AR 156.

16       Dr. Engeln concluded that Plaintiff did not show evidence of any mental or emotional

17  illness and that her interview presentation suggested at least borderline intellectual skills.  The

18  test results appeared to be influenced by many attitudinal-emotional issues, and did not appear to

19  be valid measurements of abilities.  AR 157.  He diagnosed exaggerated protocol, adjustment to

20  changes in medical-physical status, alcohol abuse, and academic delay, moderate to severe.

21  Plaintiff was capable of job adjustment in a context where instructions are unidimensional and

22  normal supervision is provided.  She could deal with the normal social exchanges of job

23  adjustment and she presented with skills adequate for entry level job adjustment in a setting

24  consonant with education, age and past job placements.  She could perform one-to-two step

25  simple job instructions, but could not perform complex or technical instructions.  Dr. Engeln

26  opined that there were no psychological restrictions to job adjustment as she had made such

27  adjustments in the past.  AR 157.

28

3

1    On December 4, 2004, Plaintiff saw consultive examiner Steven Stoltz, M.D., for an

2  internal medicine evaluation.  AR 164.  Plaintiff complained of a history of aches and pains,

3  including pain in her right medial clavicular area, right arm, abdomen, chest and legs.  She was

4  taking only Advil for pain relief.  On physical examination, Plaintiff was well-developed and in

5  no acute distress.  Her grip strength was slightly less on the left.  Range of motion in the neck

6  was within normal limits, as was range of motion in her back and upper and lower extremities.

7  There was no tenderness to palpation in her back or muscle spasms.  Straight leg raising was

8  negative at 90 degrees.  Hand grip was normal and finger approximation was intact.  There was

9  no crepitus in her knees and no patellar instability.  Her neurological examination was normal

10  and her gait was within normal limits.  AR 164-168.

11    Dr. Stoltz diagnosed aches and pains, possible hypertension and a learning disability.

12  However, he found no evidence of any ongoing medical disorders that would place any limits on

13  her activities.  AR 168.

14    On January 5, 2005, State Agency physician Allen Middleton, Ph.D., opined that Plaintiff

15  did not have any severe impairments.  In making this determination, Dr. Middleton noted that

16  Plaintiff had an academic delay in reading and abused alcohol.  She had mild restrictions in

17  activities of daily living, and mild difficulties in maintaining concentration, persistence or pace.

18  AR 170-185.  Both Dr. Middleton and State Agency physician Murray Mitts, M.D., opined that

19  Plaintiff could perform basic work activities and that her impairments were not severe.  AR 185.

20  This opinion was affirmed on June 2, 2005, by E. Murillo, Ph.D.  AR 170.

21    On July 25, 2005, Plaintiff was seen at University Medical Center for her right arm pain.

22  She was taken off work for two months and told to schedule a nerve conduction study as soon as

23  possible.  AR 197.

24    In September 2005, Plaintiff was seen at University Medical Center in follow-up for arm

25  pain.  She also wanted forms filled out.  Her arm strength was improved.  She was diagnosed

26  with diabetes, hyperlipidemia and right arm neuropathy.  AR 196.  An "off of work" form was

27  given to Plaintiff and she was instructed to return as scheduled.

28    On October 7, 2005, Plaintiff's diabetes was under good control.

4

In October 2005, a progress note indicated that Plaintiff's September 2005, EMG was normal, with no evidence of neuropathy, radiculopathy or carpal tunnel syndrome.  AR 224, 228-229.

On November 16, 2005, Plaintiff underwent a Qualified Medical Examination performed by John G. Dallas, M.D.  She complained of a right hand injury and reported that she last worked on August 23, 2005.  Plaintiff was not a good historian and did not describe any specific work injury.  Plaintiff described a constant, painful numbness in her right upper extremity.  On examination, there was slight atrophy of the right shoulder girdle musculature and dyssynchronous right shoulder motion.  Her passive right shoulder motion was unrestricted with no definite crepitus or instability.  She had unrestricted range of motion in her left shoulder.  Examination of her hands and wrists revealed no obvious deformity or atrophy and range of motion was within normal limits, although there was some difficulty producing the requested motions.  Neurologic testing revealed variable deep tendon reflexes and motor strength testing revealed weakness in the right hand and wrist (graded approximately 4/5).  There was diminished sensation to light touch and pinprick profusely over the entirety of her right and left hands.  AR 208-216.

Dr. Dallas diagnosed hypertension and diabetes, a history of dominant right sternoclavicular joint dislocation and right acromioclavicular joint separation, and diabetic peripheral neuropathy.  He concluded that Plaintiff had no causal disability or impairment and could perform her usual and customary work activities without restrictions.  He opined that Plaintiff had multiple medical problems but they were not causal or work-related.  AR 215-218.

In December 2005, Plaintiff was taking Neurontin.  Treatment notes from University Medical Center indicate that Plaintiff could not work for an additional three months.  AR 221.

On January 24, 2006, Plaintiff's treating physician, Mitchell F. Jelen, M.D., wrote a letter in response to Plaintiff's attorney's question.  Dr. Jelen indicated that Plaintiff "would be able to work in an appropriate limited capacity as most high school graduates do."  He continued, "Her alcohol use as well as melancholy should be addressed by an appropriate facility."  AR 219.

1        <u>ALJ's Findings</u>

2        ALJ Larsen determined that Plaintiff's academic delay, alcohol abuse, right arm

3    neuropathy, diabetes and hyperlipidemia were medically-determinable impairments.  AR 15.  He

4    determined, though, that these impairments, either alone or in combination, did not significantly

5    limit her ability to perform basic work-related activities for 12 consecutive months and were

6    therefore not severe.  Based on this, he found Plaintiff not disabled.  AR 15-18.

7    **SCOPE OF REVIEW**

8        Congress has provided a limited scope of judicial review of the Commissioner's decision

9    to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

10   the Court must determine whether the decision of the Commissioner is supported by substantial

11   evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

12   *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

13   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

14   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

15   401.  The record as a whole must be considered, weighing both the evidence that supports and

16   the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

17   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

18   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

19   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

20   Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

21   substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

22   Cir. 1987).

23   **REVIEW**

24       In order to qualify for benefits, a claimant must establish that he is unable to engage in

25   substantial gainful activity due to a medically determinable physical or mental impairment which

26   has lasted or can be expected to last for a continuous period of not less than 12 months.  42

27   U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

28   such severity that he is not only unable to do her previous work, but cannot, considering his age,

6

1  education, and work experience, engage in any other kind of substantial gainful work which

2  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

3  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

4  Cir. 1990).

5      In an effort to achieve uniformity of decisions, the Commissioner has promulgated

6  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

7  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[2]  Applying this process in this case, the ALJ

8  found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

9  her disability; and (2) does not have an impairment or a combination of impairments that is

10  considered "severe.  AR 15.

11      Plaintiff argues that the ALJ erred in finding that her medical impairments were not

12  severe.

13                              **DISCUSSION**

14      Plaintiff argues that the ALJ erred at step two by finding her "mental retardation" and

15  right arm neuropathy non-severe.

16      Plaintiff bears the burden of proving that she is disabled.  *Meanel v. Apfel*, 172 F.3d 1111,

17  1114 (9th Cir. 1999); 20 C.F.R. § 404.1512.  A person is disabled if her impairments are severe

18  and meet the durational requirement of twelve months.  20 C.F.R. §§ 404.1505, 404,1520(a).  A

19  severe impairment is one that significantly limits the physical or mental ability to perform basic

20  work activities.  20 C.F.R. § 404.1520(c).  Examples of basic work activities include carrying out

21  simple instructions, responding appropriately to usual work situations, dealing with changes in a

22  routine work setting, and performing ordinary physical functions like walking and sitting.  20

23  C.F.R. § 404.1521(b).

24      An impairment or combination of impairments is found "not severe" and a finding of "not

25  disabled" is made at step two if the medical evidence establishes only a slight abnormality or a

26  combination of slight abnormalities which would have no more than a minimal effect on an

27  ────────────

28      [2]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

1    individual's ability to work, even if the individual's age, education, or work experience were

2    specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his

3    or her physical or mental ability(ies) to perform basic work activities). SSR 85-28.  In

4    determining whether an impairment or combination of impairments is "severe," an ALJ should

5    carefully examine the medical findings that describe the impairments and make an "informed

6    judgment" about the limitations and restrictions the impairment and related symptoms impose on

7    the person's physical and mental ability to do basis work activities.  SSR 96-3p.

8            In his decision, the ALJ reviewed the medical evidence, including Dr. Engeln's finding

9    that Plaintiff did not have any mental or emotional impairment, Dr. Jelen's opinion that Plaintiff

10   could work in an "appropriate limited capacity," her normal EMG study, Dr. Stoltz's finding that

11   Plaintiff had no impairment-related functional limitations, Dr. Dallas' opinion that Plaintiff could

12   perform her usual and customary work activities without restriction, and the State Agency

13   physicians' opinions that Plaintiff's impairments were not severe.  AR 16-17.  He also set forth

14   the results of Dr. Engeln's tests, which showed "exaggerated protocol."  AR 16.  Based on the

15   overall medical record as cited by the ALJ, his determination that Plaintiff's impairments did not

16   have more than a minimal effect on her ability to perform basic work activities was supported by

17   substantial evidence.  Indeed, many of the examining physicians found that Plaintiff had *no*

18   impairments.

19           Insofar as Plaintiff argues that the evidence of her "mental retardation" was "undisputed"

20   and cites the test results of Dr. Engeln, this evidence can hardly be described as "undisputed."

21   Opening Brief, at 4.  Dr. Engeln noted that the Rey 15 Memory Test was positive for

22   exaggeration and specifically opined that the obtained protocol "appears to be an underestimate

23   of abilities, and instead, reflect attitudinal-emotional issues."  AR 156.  Dr. Engeln concluded

24   that Plaintiff did not show evidence of any mental or emotional illness and that the test results

25   did not appear to be valid measurements of abilities.  AR 157.  Examples of "basic work

26   activities" include carrying out simple instructions, responding appropriately to usual work

27   situations, dealing with changes in a routine work setting, and performing ordinary physical

28   functions like walking and sitting.  20 C.F.R. § 404.1521(b).  In this regard, Dr. Engeln opined

1   that Plaintiff could perform one-to-two step simple job instructions, was capable of job

2   adjustment in a context where instructions are unidimensional and normal supervision is

3   provided, and could deal with the normal social exchanges of job adjustment.  AR 156-157.

4   Contrary to Plaintiff's suggestion, Dr. Engeln's findings support the ALJ's conclusion.[3]

5          As to her right arm impairment, Plaintiff contends that she was limited to "occasional

6   reaching, handling, fingering, or feeling with her right upper extremity."  Opening Brief, at 4.

7   However, no such limitations were placed on Plaintiff.

8          Additionally, although the medical records set forth objective evidence of a right

9   shoulder/arm impairment, substantial evidence supported the ALJ's finding that the impairment

10  was not severe.  In December 2004, Plaintiff complained of pain in her right arm and clavical

11  area, but Dr. Stoltz found no evidence of any ongoing medical disorders that would place any

12  limits on her activities.  AR 168.  On March 17, 2005, Plaintiff was seen in the emergency room

13  and complained of right arm pain for one month.  She was treated with Naprosyn.  AR 211.  In

14  July 2005, Plaintiff was seen at University Medical Center.  She had decreased grip strength in

15  her right hand and her right arm shook when she tried to close her hand.  She had pain with

16  movement in all directions and was unable to perform full range of motion.  Plaintiff was

17  diagnosed with right arm neuropathy and taken off work for two months.  AR 197.  When she

18  returned in September 2005, treatment notes indicate that her strength had improved.  AR 196.

19  The September 2005, EMG was normal, showing no signs of neuropathy, radiculopathy or carpal

20  tunnel syndrome.  AR 224, 228-229.  In November 2005, Dr. Dallas examined Plaintiff and

21  although he noted some symptoms related to her right arm and clavical area, he opined that she

22  could perform her usual and customary work activities, i.e., fruit sorter.  AR 216.  On December

23  21, 2005, Plaintiff returned to University Medical Center and treatment notes indicate that she

24  was "unable to work for 3 additional months."  AR 221.

25

26

27          [3]  Insofar as Plaintiff contends that had the ALJ continued with the sequential evaluation analysis, her
    mental retardation would have been found to meet or equal Listing 12.05C, her argument is belied by Dr. Engeln's
28  conclusion that the test results were not accurate.

1   Interestingly, the limitations composed are extremely inconsistent.  The evidence relating

2   to Plaintiff's right arm/shoulder symptoms falls on either one end of the limitation spectrum or

3   the other- either she has *no* related limitations or she is unable to work for months at a time.  This

4   variation is somewhat suspect, especially given the normal EMG in September 2005, the

5   numerous opinions that she had no limitations, and Plaintiff's questionable credibility.  In

6   determining that Plaintiff's impairments were not severe, the ALJ gave great weight to Dr. Stoltz

7   and Dr. Dallas, both of whom found no right arm-related limitations.  AR 17.  *Pitzer v. Sullivan*,

8   908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).  The ALJ

9   was entitled to give the examining physicians' findings great weight, and Plaintiff does not

10   challenge this determination.  The ALJ further found that Plaintiff's allegations were not entirely

11   credible, a finding which Plaintiff also does not challenge.  AR 17.

12   Therefore, given the extreme differences in the medical evidence and Plaintiff's lack of

13   credibility, the Court finds that the ALJ's finding that her right arm impairment was not severe

14   was supported by substantial evidence.  Substantial evidence is "such relevant evidence as a

15   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

16   401.  Such evidence existed here.

17   **RECOMMENDATION**

18   Based on the foregoing, the Court finds that the ALJ's decision is supported by

19   substantial evidence in the record as a whole and is based on proper legal standards.

20   Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision

21   of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for

22   Defendant Michael J. Astrue and against Plaintiff Donna L. Lane.

23   These findings and recommendations will be submitted to the Honorable Oliver W.

24   Wanger, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after

25   being served with these findings and recommendations, the parties may file written objections

26   with the court.  The document should be captioned "Objections to Magistrate Judge's Findings

27

28

10

1   and Recommendations."  The parties are advised that failure to file objections within the

2   specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

3   F.2d 1153 (9th Cir. 1991).

4

5       IT IS SO ORDERED.

6   **Dated:   January 16, 2008**            _____ **/s/ Dennis L. Beck** _____
                                      UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28